| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br><br>UNITED STATES OF AMERICA,<br><br>-against-<br><br>NYSHIEM SPENCER,<br><br><br>Defendant. | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED:  _4/28/2022_ <br><br><br>20 Cr. 78-1 (AT)<br><br>**ORDER** |

ANALISA TORRES, United States District Judge:

Defendant, Nyshiem Spencer, moves for an order directing the Government to (1) provide a bill of particulars; and (2) disclose the identities of cooperating witnesses. Def. Mot., ECF No. 306. For the reasons stated below, the motion is DENIED.

## BACKGROUND

On January 28, 2020, the Government filed an indictment against eleven individuals (collectively, "Defendants"), including Spencer, charging them with participating in a racketeering conspiracy in violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1862(d). Indictment ¶¶ 1–2, 3–8, ECF No. 1. The Government alleges that Defendants are members of the "Monroe Houses Crew," a criminal enterprise operating in and around the James Monroe Houses, a public housing development in the Soundview section of the Bronx. *Id.* ¶¶ 1–2. The Indictment refers to multiple acts of murder, robbery, bank fraud, and narcotics distribution as part of the racketeering activity underpinning the conspiracy. *Id.* ¶ 6. It then lists ten substantive counts against Defendants. *See id.* ¶¶ 9–29.

Although Spencer is not charged in any of the substantive counts proceeding to trial,[1] the

---

[1] Spencer was originally named in Count 9 of the Indictment, narcotics conspiracy, *see* Indictment ¶¶ 24–26. However, the Government no longer intends to proceed to trial on this charge. ECF No. 196.

Indictment details, as a "special sentencing factor," that, on October 31, 2017, Spencer and others "knowingly and intentionally murdered Luis Vargas" by "plann[ing] and help[ing] [to] carry out a shooting that resulted in [Vargas'] death." *Id.* ¶ 8.  Although the Indictment does not provide further detail on this shooting, in a sentencing submission for Spencer's co-defendant Elijah Burt, the Government alleges that, on October 31, 2017, after the Monroe Houses Crew got into an altercation with a rival gang at a deli, Spencer and other defendants went to the Soundview Houses, another housing development, to "retaliate" against that gang.  ECF No. 257 at 1.  Spencer then allegedly pulled out a gun and fired six shots, killing Vargas and injuring two others.  *Id.*  Since the Indictment's filing, the Government has indicated to defense counsel that Spencer participated in two additional shootings, and in drug-related activity.  Def. Mem. at 3, ECF No. 307.

## DISCUSSION

I. <u>Bill of Particulars</u>

Federal Rule of Criminal Procedure 7(f) gives the Court the authority to order a bill of particulars "to permit a defendant 'to identify with sufficient particularity the nature of the charge pending against him, thereby enabling [a] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.'" *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (quoting *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam)).  But, "[a] bill of particulars is not a general investigative tool, a discovery device, or a means to compel the government to disclose evidence or witnesses to be offered prior to trial." *United States v. Gibson*, 175 F. Supp. 2d 532, 537 (S.D.N.Y. 2001).  Rather, "its purpose is to supplement the facts contained in the indictment when necessary to enable defendants to identify with sufficient particularity the

nature of the charges against them." *United States v. Gotti*, No. 02 Cr. 743, 2004 WL 32858, at *8 (S.D.N.Y. Jan. 6, 2004). The decision to grant or deny a bill of particulars "rests within the sound discretion of the district court." *Bortnovsky*, 820 F.2d at 574.

Spencer seeks a bill of particulars that (1) "describes the pattern of racketeering activity underpinning the alleged conspiracy, including the predicate acts" the Government intends to reference or establish at trial; and (2) "lists the names of all the co-conspirators who allegedly participated in the conspiracy, and their roles." Def. Mem. at 3–4. Spencer concedes that "this request mirrors the information that the [G]overnment often provides in an 'enterprise letter' in similar racketeering cases." *Id.* at 4. And, the Government represents that such an enterprise letter shall be provided to the defense "approximately six weeks prior to [Spencer's] confirmed trial date." Gov't Mem. at 8 n.1, ECF No. 319. "Generally, if the information sought by [a] defendant is provided in . . . some acceptable alternate form, no bill of particulars is required." *Bortnovsky*, 820 F.2d at 574.

Spencer contends that he should receive the enterprise letter immediately, rather than on the "eve of trial," "so that he can make an informed decision as to whether to proceed to trial." Def. Reply at 8–9, ECF No. 325. Although six weeks in advance does not amount to disclosure on the "eve of trial," the Court notes that, in other similar cases, the Government has provided an enterprise letter at least a few months in advance of trial. *See, e.g.*, ECF Nos. 33, 37, *United States v. D'Amico*, No. 9 Cr. 62 (S.D.N.Y.) (providing enterprise letter two months in advance of scheduled trial date); *United States v. Boyle*, No. 08 Cr. 534, 2009 WL 2032105, at *5 (S.D.N.Y. Jul. 9, 2009) (noting that the Government would provide enterprise letter three months in advance of trial); *United States v. Sierra*, No. 11 Cr. 1032, 2012 WL 2866417, at *8 (S.D.N.Y. Jul. 11, 2012) (requiring enterprise letter five months in advance of trial for fifty-defendant

racketeering case). The Court shall, accordingly, require the Government to provide the enterprise letter to Spencer at least twelve weeks in advance of his scheduled trial date of October 4, 2022. Spencer's motion for a bill of particulars is, therefore, DENIED. *See id*. at *9.

II.     Witness Disclosure

Spencer also seeks disclosure of the identities of cooperating witnesses, particularly those relating to the October 2017 shooting of Luis Vargas. Def. Mem. at 10–11. The Government generally enjoys the "privilege to withhold from disclosure the identity of persons who furnish information" to them in connection with violations of the law. *United States v. Jackson*, 345 F.3d 59, 69 (2d Cir. 2003) (quoting *Roviaro v. United States*, 353 U.S. 53, 59 (1957)). That privilege, however, "must give way" if "absent such disclosure, [a] defendant will be deprived of his right to a fair trial." *United States v. Fields*, 113 F.3d 313, 324 (2d Cir. 1997) (citations omitted). A "defendant bears the burden of establishing the need for disclosure" of an informant's identity, *United States v. Lilla*, 699 F.2d 99, 105 (2d Cir. 1983), and can establish a right to disclosure "where the informant is a key witness . . . [to] the crime charged, someone whose testimony would be significant in determining guilt or innocence," *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988) (quoting *United States v. Russotti*, 746 F.2d 945, 950 (2d Cir. 1984)).

Disclosure is not, however, required unless the informant's testimony is shown to be material to the defense. *Id.* Specifically, it is "not sufficient to show that the informant was a participant in and witness to the crime charged." *Id.*; *see also United States v. Jimenez*, 789 F.2d 167, 170 (2d Cir. 1986). Mere "[s]peculation that disclosure of the informant's identity will be of assistance is not sufficient to meet the defendant's burden; instead, the district court must be satisfied, after balancing the competing interests of the government and the defense, that the

4

defendant's need for disclosure outweighs the government's interest in shielding the informant's identity." *Fields*, 113 F.3d at 324 (citing *Roviaro*, 353 U.S. at 62).

Spencer asserts that the Government's "view of [his] role" in the shooting itself is "potentially informed by a cooperating witness." Def. Mem. at 10–11. He argues that, without disclosure, he is "unable to meaningfully assess the strength of the government's case." *Id.* at 10. But, this does not establish that the witnesses' identities are material to any of his *defenses* to the Government's case-in-chief. Spencer's conclusory assertion that the witness testimony is "necessary . . . to . . . prepare his defense," *id.* at 11, supported by nothing more than an observation that these witnesses "may be key witnesses, without further explanation, is insufficient to overcome the privilege at this stage," *United States v. Lobo*, No. 15 Cr. 174, 2017 WL 1102660, at *3 (S.D.N.Y. Mar. 22, 2017); *see also United States v. Feola*, 651 F. Supp. 1068, 1138 (S.D.N.Y. 1987) ("Where defendants make only an abstract, conclusory claim that disclosure is necessary to prepare for trial, the defendants fail to meet their burden.").

Spencer relies heavily on *United States v. Gomez*, where the court found that the defendants had met their burden for disclosure because the basis for their prosecution—a reverse sting operation—"appears to rest entirely on" conversations between the defendants and an informant. No. 17 Cr. 602, 2018 WL 501607, at *3 (S.D.N.Y. Jan. 19, 2018). But, that case is not analogous to the circumstances here. As Spencer concedes, the shooting at issue amounts to one predicate act in a larger racketeering conspiracy charge, Def. Mem. at 11, and the Government represents that it has "provided [Spencer] with extensive discovery materials" regarding the October 2017 shooting, "including law enforcement reports and surveillance video," Gov't Mem. at 11—evidence that was not available in *Gomez*. Unlike *Gomez*, the Court

5

cannot conclude that the Government's prosecution of Spencer rests entirely on witness testimony.[2]

Spencer's speculation that the Government's case is "potentially informed" by witness testimony, Def. Mem. at 11, is insufficient to demonstrate either the materiality of these witnesses to his defense, or that he will be "deprived of a fair trial" absent disclosure of their identities several months in advance of trial. And, the Government's interest in protecting the safety of their witnesses, in light of the violence and tragedy that has already touched individuals involved in this matter,[3] clearly outweighs Spencer's "generalized, and unsupported, statement of need to learn the informants' identities . . . possibly months[] before trial." *United States v. Jimenez*, 824 F. Supp. 351, 365 (S.D.N.Y. 1993). This is particularly so where the Government represents that it "will disclose the identities of its cooperating witnesses when it provides material pursuant to 18 U.S.C. § 3500 . . . several weeks in advance of trial." Gov't Mem. at 12 n.2. The Court sees no basis, therefore, to compel disclosure of witness identities at this early stage. *See United States v. Murgio*, 209 F. Supp. 3d 698, 726 (S.D.N.Y. 2016); *Lobo*, 2017 WL 1102660, at *3. Spencer's motion to compel disclosure of witness identities is, accordingly, DENIED.

---

[2] Importantly, even *Gomez* does not support Spencer's contention that disclosure of witness identities is required several months before trial. Indeed, the *Gomez* court found that "immediate disclosure" of the informant's identity was "unnecessary" and "inappropriate" in light of the Government's concerns around the informant's safety, finding that disclosure "six weeks before trial" was appropriate. *Gomez*, 2018 WL 501607, at *4; *see also United States v. Davis*, No. 17 Cr. 610, 2018 WL 4373998, at *9–10 (S.D.N.Y. Sept. 13, 2018) (finding early disclosure of witness identities was warranted by defendants' interests, but requiring disclosure only two weeks before trial).

[3] As the Government notes, the Soundview section of the Bronx has recently experienced particularly high levels of violent crime. Gov't Mem. at 11. Indeed, just a few months ago, two of Spencer's co-defendants were brutally murdered while sitting outside the James Monroe Houses. *See* John Annese, *Second Brother Dies in Gang-Related Bronx Shooting*, N.Y. DAILY NEWS (Sept. 13, 2021), https://news.yahoo.com/second-brother-dies-gang-related-212100831.html. These safety concerns further militate against early disclosure of witness identities.

## CONCLUSION

For the reasons stated above, Spencer's motion is DENIED. The Clerk of Court is directed to terminate the motion pending at ECF No. 306.

SO ORDERED.

Dated: April 28, 2022
       New York, New York

_____
ANALISA TORRES
United States District Judge